

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| SALLY A. WHITE, | ) | No. ED108036 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Marion County |
| vs. | ) | |
| | ) | Honorable Rachel L. Bringer Shepherd |
| CLAYTON H. WHITE, | ) | |
| | ) | |
| Appellant. | ) | Filed: November 3, 2020 |

### Introduction

Clayton White ("Father") appeals the trial court's judgment and decree of dissolution of marriage ("Judgment") awarding sole physical custody of S.W., G.W., and E.W. (the "Children") to Sally White ("Mother") and joint legal custody of the Children to both him and Mother. He raises four points on appeal.

In Point I, Father contests the trial court's decision to grant joint legal custody of the Children to Mother, arguing it was unsupported by substantial evidence and a misapplication of law. In Point II, Father argues the trial court erred by granting Mother sole and "primary" physical custody of the Children as against the weight of the evidence. In Point III, Father argues the trial court misapplied the law under section 452.400.1(1)[1] by failing to properly create a schedule for him to spend time with his oldest child, S.W. In Point IV, Father argues the trial court misapplied

---

[1] All statutory references are to RSMo (2017), which was the version of the statute in effect at the time the dissolution action was filed, unless otherwise indicated.

the law by designating Mother as having either "primary" or sole physical custody because primary physical custody is not statutorily permissible and because the Parenting Plan ("Plan") gives him significant physical custody of the Children.

The Judgment awarding joint legal custody to Father and Mother is supported by substantial evidence. However, the Judgment's classification of the physical custody arrangement as "primary" rather than "joint" or "sole" is erroneous. Therefore, under Rule 84.14,[2] we modify the Judgment so the physical custody arrangement is designated "sole" physical custody rather than "primary" physical custody. We change only the designation assigned to the physical custody arrangement and otherwise affirm the Judgment's award of sole physical custody to Mother. Because the Judgment failed to specifically detail Father's visitation rights regarding S.W. in the Plan and erroneously delegated the trial court's authority to determine visitation to a counselor, we reverse the Judgment ordering visitation between Father and S.W. and remand to allow the trial court to follow the requirements of section 452.400.1(1).

The Judgment is affirmed in part and reversed and remanded in part.

**Factual and Procedural History**

Father and Mother were married on January 19, 2007. Three children were born by the parties: S.W. age 15; G.W. age 13; and E.W. age 12. S.W. is diagnosed with autism, Tourette's Syndrome, Attention Deficit Hyperactivity Disorder ("ADHD") and anxiety. G.W. is diagnosed with ADHD and Oppositional Defiant Disorder. Father and Mother separated on June 1, 2017. Mother filed her petition for dissolution of marriage on June 13, 2017, requesting sole legal and physical custody of the Children. On June 27, 2017, Father filed his counter-petition for dissolution of marriage, requesting he and Mother be awarded joint legal and physical custody of

---

[2] All rule citations are to the Missouri Supreme Court Rules (2018), unless otherwise indicated.

the Children. On October 25, 2017, Father filed an amended parenting plan, requesting sole legal and physical custody of the Children.

A trial was held on May 24, May 25, July 10, July 11, July 19, and July 20, 2018. The trial court heard testimony from G.W., S.W., Mother, and Father. The evidence adduced at trial revealed that, during the marriage, Father worked long hours as a union pipefitter. Mother was a stay-at-home parent to the Children. Mother was responsible for much of the direct caregiving to the Children during the parties' marriage. Mother was primarily responsible for handling the Children's medical needs, including attending doctor appointments. Father rarely – if ever – got involved or showed interest in learning about the Children's disabilities or treatment during the marriage.

The relationship between Father and S.W. is strained. Much of the conflict between Father and S.W. centers around S.W.'s belief Father is a liar and the fact Father physically punished S.W. as a child, sometimes injuring him. S.W.'s disorders cause him to react strongly to perceived lies. Testimony at trial established Father punished S.W. physically as early as two years old, including throwing S.W. across a room.

Father's treatment of the family's animals distresses S.W. Father killed the family's hunting dog and lied to S.W. about it. Father also sold or gave away two other family dogs. S.W. has pet chickens, which he named and cares for. Father kicked and killed S.W.'s favorite chicken. Father did not admit he killed the chicken to S.W., exacerbating S.W.'s belief Father is a liar.

S.W. has had difficulty adjusting to Father's relationship with Father's new girlfriend. S.W. associates girlfriend with the end of his parents' marriage and testified he has considered trying to hurt girlfriend.[3] Father denied his relationship with girlfriend to S.W., against the advice

---

[3] S.W. has not directly acted on this impulse, though he did use knives to mutilate Styrofoam mannequins that he said represented girlfriend and Father.

3

of S.W.'s doctors. S.W. testified he prefers living at Mother's house and does not like moving from house to house. Since his parents' separation, S.W. has resisted staying in contact with Father. S.W. has threatened to shoot himself if he is forced to spend time with Father. While G.W. and E.W. usually talk to Father when he calls, S.W. often refuses to speak. In contrast, S.W. and his siblings have positive relationships with Mother's new boyfriend and boyfriend's children.

The parties' middle child G.W. has ADHD and Oppositional Defiant Disorder. Like S.W., G.W. receives treatment. G.W. testified Father did not attend his medical appointments during the marriage. G.W. testified Father had a history of becoming angry and physically punishing him, including throwing him against a wall. G.W. testified he is bothered by Father's pattern of lying about his relationship with his girlfriend, but is more willing to have a relationship with Father than S.W. is. G.W. would prefer to live with Mother but wants to continue having visitation with Father.

The trial court entered its Judgment on December 31, 2018. The Judgment awarded joint legal custody of the Children to Father and Mother and "primary" physical custody to Mother. It also awarded Father visitation. The terms of Father's visitation were set forth in the Plan attached to and incorporated into the Judgment. The Plan provided:

> Father shall be entitled to visitation with [G.W.] and [E.W.] on alternate weekends, from Friday at 6:00 p.m. until Monday morning at 8 a.m. if no school, or until the start of school if school is in session; and every Wednesday from 5 p.m. until 8 p.m. Father and [S.W.] shall jointly attend counseling at a counselor chosen by Father and shall have visits at the recommendation of the counsellor [sic], with the goal of working toward the weekly, summer, and holiday visitation schedule of [E.W.] and [G.W.].[4]

---

[4] The text of the Judgment and Plan are inconsistent regarding "primary" versus "sole" custody. The Judgment states the trial court "[found] that it is in the children's best interests that . . . [Mother] have *primary* physical custody of the children with visitation with [Father] set forth in the parenting plan . . . ." (emphasis added). The Plan states "Mother shall have the *sole* physical custody of the minor childre[n]."

4

The Plan provided a detailed schedule for which holidays Father was entitled to visitation with "the Children" in odd or even years. The Plan also provided Father would "be entitled to three separate one week periods of visitation (to include, and not be in addition to Father's normal weekend visitation) to be exercised during each summer or during the Children's Christmas break."

We will include additional relevant facts and procedural posture as needed to address Appellant's claims.

**Standard of Review**

Appellate review of a judgment of dissolution is governed by *Murphy v. Carron*, 536 S.W.3d 30, 32 (Mo. banc 1976). *Schutter v. Seibold*, 540 S.W.3d 494, 499 (Mo. App. W.D. 2018). The trial court's judgment will be affirmed "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* "We view the evidence and permissible inferences drawn therefrom in the light most favorable to the judgment" and disregard contrary evidence. *In re Marriage of Scrivens*, 489 S.W.3d 361, 363 (Mo. App. S.D. 2016). The trial court is "free to believe or disbelieve all, part, or none of the testimony of any witness." *Schutter*, 540 S.W.3d at 499. "We do not reweigh the evidence, even if the evidence could have supported another conclusion." *Cox v. Cox*, 504 S.W.3d 212, 217 (Mo. App. W.D. 2016).

The trial court is in a superior position to judge the credibility of witnesses, as well as their character, sincerity, and other intangibles that might not be completely revealed by the record. *Gismegian v. Gismegian*, 849 S.W.2d 201, 202 (Mo. App. E.D. 1993). We presume the court's custody decree was in accordance with the best interest of the children. *Id.* Because the trial court has an affirmative duty to determine what is in the best interest of the children, we further presume

5

the custody decision is motivated by what the court believes is best for the children. *Keel v. Keel*, 439 S.W.3d 866, 875 (Mo. App. E.D. 2001).

## Discussion

*Point I: The Trial Court did not Err by Granting the Parents Joint Legal Custody*

Father argues the trial court's award of joint legal custody was not supported by substantial evidence and was based upon a misapplication of the law.[5] He argues he should be awarded sole legal custody of the Children. Father claims Mother will not cooperate enough for joint legal custody to be in the best interest of the Children.

Section 452.375 governs the trial court's determination of child custody awards. Subsection 2 requires the trial court to make its custody decision "in accordance with the best interests of the child" after considering "all relevant factors." Subsection 5 requires:

> 5. Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:
>
> (1) Joint custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award . . . ;
>
> . . . .
>
> (4) Sole custody to either parent; or
>
> (5) Third party custody or visitation . . . .

"Joint legal custody" is defined as "the parents shar[ing] the decision-making rights, responsibilities, and authority relating to the health, education, and welfare of the child[ren], and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise

---

[5] Point I is multifarious because it purports to argue the Judgment was unsupported by substantial evidence and a misapplication of the law. Misapplication of the law challenges *and* substantial evidence challenges are "distinct claims" and "must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014) (citing Rule 84.04). The argument portion of Father's brief only asserts the Judgment was unsupported by substantial evidence. We review his claim *ex gratia*.

6

of decision-making rights, responsibilities, and authority." § 452.375.1. The legislature has "expressed a public policy preference for joint custody where such an arrangement is in the best interests of the child." *In re Marriage of Barnes*, 855 S.W.2d 451, 455 (Mo. App. S.D. 1993).

Joint legal custody enables parents to share decision-making rights, responsibilities, and authority over the health, education, and welfare of the children. *J.F.H. v. S.L.S.*, 550 S.W.3d 532, 536 (Mo. App. E.D. 2017). Joint custody is not appropriate and not in the best interest of the children when parents are unable to make shared decisions concerning the welfare of their children. *Morgan v. Morgan*, 497 S.W.3d 359, 373 (Mo. App. E.D. 2016). The parents' ability and willingness to communicate and cooperate is crucial in considering whether joint legal custody is proper. *Id*. Joint legal custody may be proper even if there is some level of personal tension and hostility between the parents, provided there is substantial evidence that despite this acrimony the parties nonetheless have the ability and willingness to fundamentally cooperate in making decisions concerning the children's upbringing. *Id*.

Father argues Mother's testimony and actions show she is trying to reduce Father's role in the Children's lives. He points to Mother's testimony that she did not co-parent with him, Mother's alleged failure to encourage a relationship between Father and S.W., Father's exclusion from the Children's medical appointments, and boyfriend's increased involvement in the Children's medical care. Father also notes both parties requested sole legal custody at different points in this litigation. Father argues these facts show the trial court's determination was not supported by substantial evidence and urges us to find joint legal custody improper here.

We disagree. Although Mother and Father have difficulty cooperating, challengers to a custody award bear a heavy burden. We presume the trial court's award was made in the best

7

interest of the children. *Keel*, 439 S.W.3d at 875. We will not disturb the award unless we are "firmly convinced that the welfare of the children requires some other disposition." *Id*.

Father has not met this burden. Father's brief ignores both parties requested joint legal custody at different points in the litigation. Father's brief lacks any argument why he should be awarded sole legal custody. The trial court considered the parents' competing claims about each other's faults. The trial court heard Father's claims about Mother's alleged interference with his involvement in the Children's lives. The trial court also considered Mother's claims about Father's disinterest in and conflict with the Children during the marriage and Mother's role as the de facto day-to-day caretaker of the Children.

Mother and Father testified they believe it is in the Children's best interests that they both: have frequent, continuing, and meaningful contact with the Children; participate in decisions affecting the Children's health, education, and welfare; and resolve disputes involving the Children amicably. Mother testified she is "hopeful" joint legal custody will be successful and she and Father can communicate. Mother admitted she and Father never communicated about parental decisions regarding doctors, daycares, or hospitals during their marriage, however she testified she gave Father an opportunity to be included in those decisions. This evidence has probative force regarding the propriety of joint legal custody in this case, and the trial court could reasonably decide the case based upon it. *See Hopkins v. Hopkins*, 449 S.W.3d, 793, 803 (Mo. App. W.D. 2014).

The trial court was better positioned than this Court to evaluate the weight of the evidence and credibility of the witnesses at trial. There was no evidence suggesting Mother acted to prevent Father from becoming more involved. Mother argues – and we agree – her statement that she did not co-parent with Father, in context, meant Mother handled virtually all childcare responsibilities

8

and Father was minimally involved in the day-to-day care of the Children by his own choice. To the extent Father is concerned about being excluded from future decisions about the Children, joint legal custody cements his right to be an active participant with equal input.

The trial court concluded – and we agree – the Children would benefit moving forward from *both* parents taking an active interest in their Children's lives and care, an arrangement that generally seems to have been absent during the marriage. Under our standard of review, our role is not to reweigh the evidence presented to the trial court, and we will not reverse the trial court's decision because the evidence could have supported a different conclusion. *Cox*, 504 S.W.3d at 217. The trial court was free to disbelieve Mother and Father's testimony they could not cooperate to make decisions for the Children. *Schutter*, 540 S.W.3d at 499.

There is substantial evidence to support the trial court's Judgment awarding Mother and Father joint legal custody of the Children.

Point I is denied.

*Points II & IV: Whether the Trial Court Erred by Awarding Sole Physical Custody to Mother*

In Point II, the parties dispute whether the trial court erred by awarding sole physical custody to Mother and the significance of the trial court's use of the term "primary physical custody." Father argues the trial court's award was against the weight of the evidence. Father claims Mother should not have sole physical custody because he believes she would try to prevent him from having adequate contact with the Children. Father claims Mother's behavior is motivated by her animosity toward his girlfriend. In Point IV, Father argues the trial court erred by designating the physical custody component of the Plan as "sole" physical custody with Mother. Father argues the Plan gives him "significant" time with the Children rising to the level of joint physical custody.

9

The parties commingled their arguments in Points II and IV and we believe our opinion will be clearer by addressing these Points together. We hold (A) the trial court did not err in its division of physical custody regarding G.W. and E.W., (B) the trial court erred by using the term "primary physical custody" because "primary physical custody" does not exist in Missouri, and (C) the trial court did not err by labeling the Plan "sole physical custody."

## A. The Trial Court did not Err in its Division of Custody

Father argues the trial court erred by giving sole physical custody of the Children to Mother because the court's ruling was against the weight of the evidence. Father argues the trial court should have created a joint physical custody arrangement, with Father as the residential parent. Father concedes he must meet a high bar for this Court to reverse a physical custody order, but argues Mother's "repeated and regular interference with [his] custody, especially with regard to [S.W.], as well as her replacement of [him] with her [boyfriend] as a father figure in the lives of the Children, such an award is against the weight of the evidence."

Father believes Mother instigated S.W.'s resistance to having a relationship with him. He directs our attention to Mother's failure to punish S.W. when S.W. resists spending time with Father and Mother's complaints about Father calling the Children while they are in Mother's custody. Father reminds us both parents had affairs. In Father's view, Mother emphasizes his indiscretions to the Children while obscuring her own. Father relies on *In re Marriage of B-A-S* for the proposition that a parent who uses the other parent's extramarital affairs to destroy the children's relationship with the parent should be denied custody. 541 S.W.2d 763 (Mo. App. 1976). Father argues Mother is trying to destroy his relationship with the Children because of her personal animus toward girlfriend. He claims if Mother retains sole physical custody of the Children, particularly S.W., she will ensure their relationship with Father is never repaired.

10

Mother argues the trial court correctly awarded her sole physical custody of the Children. She notes her nearly exclusive role as the childcare provider in the family as a stay-at-home parent. Mother underscores her participation in the Children's education, extracurricular activities, and healthcare, contrasting it with Father's general lack of involvement. Mother argues Father's failure to learn about parenting a child with autism is the primary reason his relationship with S.W. is poor.

Mother also argues Father should not have physical custody because of his past behavior. Testimony at trial established Father intimidated his family by physically punishing the Children, throwing and breaking other peoples' belongings, punching holes in walls, and throwing things at Mother with the Children present. Mother notes Father has required hospitalization and psychiatric help for his anger in the past but failed to take the prescribed medication. She argues Father has not adequately addressed his anger management issues that caused him to be hospitalized.

We agree with Mother. As we noted above, the record shows S.W.'s strained relationship with Father is not Mother's fault. Father was presented with consistent advice for parenting a child with autism and chose to disregard that advice, to the detriment of his relationship with S.W. Father's argument that Mother's emphasis on his affairs and relationship with girlfriend should be grounds for termination of physical custody and reliance on *B-A-S* is also without merit. In *B-A-S*, the father lost custody because he consistently spoke unkindly about the mother to their children, tried to influence the children to ask the court to stay with the father, and physically intimidated the children through punishment, including hitting them with a belt and pulling their hair. 541 S.W.2d at 766-67. There is no evidence Mother behaved similarly, but there is significant evidence Father's relationship with the Children was damaged by their belief he lies to them.

11

The record supports Mother's argument she did not engage in the kind of undue influence over the Children that might justify reversing the trial court. She encouraged the Children to talk with Father. She required the Children, including S.W., to participate in activities with Father even when they did not want to. The Children testified Mother did not attempt to influence their perception of Father. We affirm the details of the trial court's Plan regarding G.W. and E.W., but remand the portions concerning S.W. as explained in Point III.

### B. The Trial Court Erred by Referring to "Primary" Physical Custody

The parties dispute the significance of inconsistent wording between the Judgment and Plan. The Judgment refers to "primary" physical custody while the Plan refers to "sole" physical custody. Our statutory scheme does not include a designation of "primary" physical custody. *Speer v. Colon*, 155 S.W.3d 60, 62 (Mo. banc 2005). Under section 452.375.1, joint physical custody is an arrangement where the children reside with or are under the care and supervision of each parent for significant, though not necessarily equal, periods of time. Mother argues the trial court made a harmless error in wording. She directs our attention to *Malawey v. Malawey*, a case where the trial court erroneously granted "primary" custody instead of "sole" custody to one of the parents. 137 S.W.3d 518 (Mo. App. E.D. 2004). In *Malawey*, this Court fixed the error without remanding under MO. R. APP. P. 84.14. *Id*. at 525. This Court stated, "[w]e can render the judgment that the trial court should have rendered when the record and evidence gives us confidence in the reasonableness, fairness, and accuracy of the conclusion reached. *Id*.

This Court most recently addressed the issue of "primary physical custody" designations in 2016. *Morgan*, 497 S.W.3d at 359. In *Morgan*, we "sternly admonished the use of 'primary physical custody.'" *Id*. at 365-66. Our statutory scheme "does not include 'primary physical custody' as a statutorily permissible physical custodial arrangement, only joint or sole physical

custody is statutorily permissible." *Id*. at 366-67. "Although the designation of either joint or sole physical custody with liberal visitation has little or no practical effect in most situations, such designation is crucial for modification purposes." *Id*. at 367-68. Our courts must therefore use precise language when awarding custody because the most recent child custody designation determines the applicable modification standard, regardless of the actual allocation of parenting time. *Id*.

We remind the trial courts not to use the term "primary physical custody" in place of "sole physical custody" in the future because it confuses the parties and has no statutory meaning. The trial court's references to "primary" and "sole" physical custody in the Judgment and the Plan are therefore modified to reflect a sole physical custody designation under Rule 84.14.

Point II is denied as modified.

C. The Trial Court Did Not Err by Designating the Custody Order "Sole Physical Custody"

Mother argues the distinction between sole or joint physical custody is irrelevant at this point and we should not consider modifying the trial court's judgment. We disagree. As we noted above, whether physical custody was initially designated "sole" or "joint" is a "crucial" detail because it changes the moving parent's burden of proof in subsequent motions for modification of the custody order. *Morgan*, 497 S.W.3d at 365-68; Mo. Rev. Stat. 452.410 (modifying custody); Mo. Rev. Stat. 452.400.2 (modifying visitation).

To modify a joint physical custody order, the moving parent must show a substantial change of circumstances for the children or custodial parent. *Morgan*, 497 S.W.3d at 365-66. We require a substantial change of circumstances because of this State's longstanding public policy preference that children maintain frequent, continuing, and meaningful contact with both parents and our Courts' interest in maintaining the principles of *res judicata* and the finality of final

13

judgments. *Id.* In contrast, under a section 452.400.2 visitation order, sole physical custody may be modified without a substantial change in circumstances and requires the movant to prove only that modification of visitation would be in the best interest of the children. *Id.* Considering the possibility of future motions to modify, it is not premature to address whether the trial court erred in designating the arrangement sole physical custody.

Father argues the trial court should have designated the custody arrangement "joint physical custody" instead of "sole physical custody" because his percentage of time with the Children is "significant" under Mo. Rev. Stat. § 452.375.1. Father has custody of G.W. and E.W. every other weekend from Friday evening until Monday morning, and for three hours every Wednesday. Father also has custody for three one-week periods every summer, on Father's Day, and other designated holidays. He notes the current Plan gives him custody of G.W. and E.W. for a larger percentage of the year than many other cases where Missouri courts designated a custody arrangement "joint physical custody."[6]

To determine whether a physical custody arrangement is properly designated as joint or sole, we look to the periods of time each parent has for the care and supervision of the child. *Wood v. Wood*, 193 S.W.3d 307, 311 (Mo. App. E.D. 2006). Father has custody of G.W. and E.W. for 21 days during the summer, 2.5 days on 26 weekends per year, and three weekday hours every week. This arrangement is generally referred to as a Siegenthaler schedule. *Morgan*, 497 S.W.3d at 370-71.

---

[6] Father asks this Court to rely on a number of cases decided before and after *Morgan* where the custody arrangement was designated "joint physical custody" and the noncustodial parent's share of custody was less than or roughly equal to Father's share of custody here. *See Nichols v. Ralston*, 929 S.W.3d 302, 305 (Mo. App. S.D. 1996); *Doerhoff v. Salmons*, 162 S.W.3d 498, 499 (Mo. App. W.D. 2005); *Gammon v. Gammon*, 529 S.W.3d 350 (Mo. App. W.D. 2017). Father asks us to hold *Morgan* was wrongly decided. We decline Father's request.

This Court addressed the definition of "significant" time in *Morgan* while considering a Siegenthaler custody schedule similar to the schedule here. *Id*. at 369-70. The meaning of "significant" time is undefined by statute. *Id*. In the absence of a statutory definition, the *Morgan* Court looked to the dictionary definition of "significant."[7] *Id*. The *Morgan* court determined Siegenthaler custody "is not 'significant' custodial time" because "[this Court did not] believe ***any reasonable parent*** would argue 2 or 3 nights out of 14 constitutes 'joint physical custody.'" *Id*. (emphasis in original). In *Morgan*, the custody schedule included a similar summer and holiday schedule to the schedule here. *Id*. at 369. Father's custody is not "significant" under section 452.375.1. *Id*. at 371.

We affirm the trial court's grant of sole physical custody to Mother.

Point IV is denied.

### *Point III: Visitation Schedule with S.W.*

In his third point, Father argues the Judgment misapplied the law because it failed to properly define his visitation rights. Father argues the Judgment failed to designate times for him to exercise his visitation rights regarding S.W. and improperly delegated judicial authority over his visitation rights regarding S.W. to a counselor. We agree.

"The trial court derives its jurisdiction to determine custody of children in marriage dissolution cases by statute." *Aubuchon v. Hale*, 384 S.W.3d 217, 223 (Mo. App. E.D. 2012). Section 452.400.1(1) requires that "[a] parent not granted custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." Section 452.400.1(1) further requires the trial court must "enter an order specifically detailing the visitation rights of the

---

[7] The definition of "significant" is "of a noticeably or measurably large amount." MERRIAM-WEBSTER ONLINE DICTIONARY, 2020, https://www.merriam-webster.com/dictionary/significant.

15

parent without physical custody rights to the child and any other children for whom such parent has custodial or visitation rights."

This Court presumes the trial court awarded custody in view of the children's best interest. *Beshers v. Beshers*, 433 S.W.3d 498, 505 (Mo. App. S.D. 2014). Courts are not required to specifically detail visitation rights "if the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." *Id.* However, it is reversible error for trial courts to fail to make findings of endangerment before mandating counseling or imposing other supervision restrictions. *Fowler v. Fowler*, 504 S.W.3d 790, 798 (Mo. App. E.D. 2016) (citing *Parker v. Parker*, 918 S.W.2d 299, 300 (Mo. App. E.D. 1996) (reversing and remanding where trial court restricted visitation without making findings of physical endangerment or impairment of emotional development, and such findings were not supported by the record)).

Trial courts may order a parent and child to undergo counseling with an *appointed counselor*. *Aubuchon v. Hale*, 384 S.W.3d 218, 219 (Mo. App. S.D. 2012) (emphasis added). However, courts may not delegate the custody, visitation, or counseling schedule to the counselor because "[p]ermitting others to alter custody arrangements is an impermissible delegation of judicial authority. *Id.* at 223. Although we recognize the difficulty in fashioning a remedy in this area, the trial court cannot abdicate its responsibility to a counselor. *Id.*

The Judgment provides "Father shall be entitled to visitation with [G.W.] and [E.W.] on alternate weekends, from Friday at 6:00 p.m. until Monday morning at 8 a.m. if no school, or until the start of school if school is in session; and every Wednesday from 5 p.m. until 8 p.m." The Judgment provides "Father and [S.W.] shall jointly attend counseling at a counselor *chosen by Father* and shall have visits at the recommendation of the counsellor [sic], with the goal of working

16

toward the weekly, summer, and holiday visitation schedule of [E.W.] and [G.W.]" (emphasis added). The Judgment also provides Father is entitled to visitation with "the Children" on specific holidays in odd or even years and Father is "entitled to three separate one week periods of visitation (to include, and not be in addition to Father's normal weekend visitation) to be exercised during each summer or during the Children's Christmas break."

The trial court did not provide Father with visitation rights to S.W. Even if we assume the trial constituted a "hearing" for purposes of determining whether a child would be physically or emotionally endangered by custody with Father, the trial court failed to make specific findings to that effect. That alone is reversible error. *Fowler*, 504 S.W.3d at 798.

We also find the Judgment, as it pertains to Father's visitation with S.W., does not comply with the requirements of section 452.400.1(1). As noted, the Judgment does not provide for any scheduled visitation between Father and S.W. Instead, the Judgment allows a counselor of Father's choice to decide when conditions have changed enough between Father and S.W. to alter the Judgment allowing for any visitation between Father and S.W. The trial court failed to order Father and S.W. undergo counseling with an *appointed counselor*. *Aubuchon*, 384 S.W.3d at 222. Furthermore, the Judgment erroneously delegated statutory authority. "Permitting others to alter custody arrangements is an impermissible delegation of judicial authority." *Id*. at 223. Only the trial court has the authority to determine child custody and visitation. *Clark v. Clark*, 568 S.W.3d 920, 923 (Mo. App. S.D. 2019). The trial court erred by delegating its judicial authority to a counselor of Father's choice to decide when Father and S.W. may have visitation.[8]

---

[8] Mother argues the Judgment incorporating counseling sessions into the visitation schedule for Father and S.W. in this case is no different than the judgment incorporating counseling sessions that was deemed not to have been an erroneous delegation of judicial authority in *Beshers v. Beshers*, 433 S.W.3d 498 (Mo. App. S.D. 2014). However, Mother's reliance on *Beshers* is misplaced. In *Beshers*, the parenting plan provided a mother and a child would begin counseling within ten days of the final judgment. *Id.* at 510. However, the parenting plan also provided Mother would have unsupervised visitation with the child *within sixty days*, or sooner if the counselor determined the mother and child were ready, at a location and for a duration determined by the counselor. *Id.* Thirty days after the initial

17

We further note the Judgment does not clarify whether S.W. is included in Father's visitation schedule with G.W. and E.W. during the summer and holidays, as the Judgment refers to "the Children" when discussing Father's visitation rights over the summers and during holidays but states counseling is required for S.W. and Father "with the goal of working toward the weekly, *summer, and holiday* visitation schedule of [E.W.] and [G.W.]" (emphasis added). The vagueness of the Judgment renders it in violation of section 452.400.1(1). *See Kamler v. Kamler*, 213 S.W.3d 185, 188-89 (Mo. App. E.D. 2007) (reversing a trial court's order as "vague" and noncompliant with section 452.400.1(1) where the order stated the father was "awarded supervised visitation with a family member or individual approved by the mother, only, at such times approved by the mother").

Mother concedes in her brief the Judgment does not provide a "specific schedule" for visitation between Father and S.W. However, Mother argues, without citation to any statute or case, the Judgment's lack of specificity is permissible because of the "unique" circumstances presented by S.W.'s autism. This argument is meritless. Section 452.400.1(1) requires visitation orders must be "specifically detail[ed]," without exception.

Point III is granted. We remand to allow the trial court to follow the requirements of section 452.400.1(1).[9]

---

unsupervised visit, Mother would begin parenting time according to a schedule provided in the parenting plan. *Id.* The involvement of a counselor in the parenting plan in *Beshers* was held not to be an erroneous delegation of judicial authority because the mother was guaranteed to spend time with the child, regardless of the outcome of counseling. *Id.* Because the custody arrangement was "not subject to 'alteration'" by the counselor, the Southern District held no improper delegation of judicial authority occurred. *Id.* Unlike in *Beshers*, the Judgment provides Father and S.W. will have no visitation unless or until a counselor of Father's choice says so. *Beshers* is distinguishable.

[9] Upon remand the trial court may order visitation or supervised visitation by an appointed counselor if such supervision is deemed necessary under section 452.400. Any subsequent modification of visitation would be subject to the lower burden of proving it is in S.W.'s best interests rather than a substantial change in circumstances necessary to modify custody. *Morgan*, 497 S.W.3d at 365-66.

18

## Conclusion

The Judgment is affirmed in part and reversed and remanded in part. The Judgment granting joint legal custody to Mother and Father is affirmed. The Judgment granting Mother "primary" physical custody is modified to conform with the "sole" physical custody granted Mother in the Plan under Rule 84.14. The trial court is directed on remand to clarify its Judgment and Plan whether S.W. is, or is not, included in the phrase "the children" in the Plan regarding "Holiday" and "Summer/Christmas Break" visitation; the case is remanded to the trial court to correct its Judgment regarding Father's visitation with S.W. The trial court may order visitation, or supervised visitation with an appointed counselor, if such visitation is deemed necessary, after the statutory findings required under 452.400.1(1) are followed.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.

19