**Randy Ellis GAMMON, Respondent,**

v.

**Angie Kay GAMMON, Appellant.**

### WD 79869

Missouri Court of Appeals, Western District.

OPINION FILED: September 19, 2017

Walter E. Williams, Joplin, MO, for respondent.

Michael C. McIntosh, Independence, MO, for appellant.

Before Division One: James E. Welsh, Presiding Judge, Thomas H. Newton, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

Angie Gammon ("Mother") appeals the judgment of the Circuit Court of Vernon County granting to Randy Gammon ("Father") sole medical decision making authority for the couple's two children. Further, Mother appeals the court's division of overnight parenting time between Mother and Father. We affirm.

## Factual Background [1]

■ Mother and Father were married in 2007 and had two sons in 2008 and 2010, respectively. Mother filed for divorce from Father in 2011 but that petition was ultimately dismissed. In December 2012, Father filed for divorce from Mother. The court entered its Judgment of Dissolution of Marriage June 16, 2016 ("Judgment"). At the time of the Judgment, the children were eight and six.[2]

The Judgment called for joint legal and physical custody between Mother and Father ("Custody Plan"). The Custody Plan provided that the children's principle residence shall be with Father but that Mother would have parenting time with both children every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. Additionally, Mother would have the children Wednesdays from 3:00 p.m. to 7:00 p.m. The couple would have a reasonably equal split of holidays. The Custody Plan was almost identical to the parenting plans submitted by Father and Mother.[3]

The court found that Mother and Father should make joint decisions on the children's education, dental, child care providers, extracurricular activities, and religious upbringing. The court, however, found that "Mother has unorthodox beliefs as to medical treatment" and awarded Father sole decision making authority over the children's medical treatment and selection of the children's health care providers.

Mother appeals the Judgment of the court arguing that the court did not have sufficient evidence upon which to determine that Father should have sole medical decision making authority. Further, she claims that the Court did not provide her with enough parenting time to meet the statutory requirement for "frequent, continuing, and meaningful contact" under section 452.375.4.[4]

---

1. We view the evidence in the light most favorable to the trial court's judgment and defer to the trial court's credibility determinations. *Potts v. Potts*, 303 S.W.3d 177, 184 (Mo. App. W.D. 2010).

2. Father also had two children from a previous relationship, one of whom resided primarily with Father at the time of the dissolution.

3. The parties both submitted nearly identical parenting plans except that Mother's suggest-

ed parenting plan would have given Father two additional weekends than Father's plan gave to Mother. Although Mother testified that she would like a 50/50 split of custody that was not the plan she submitted and the court found Mother only testified to this to put herself in a better light.

4. All statutory citations are to RSMo 2000 as updated through the December 31, 2016 cumulative supplement, unless otherwise indicated.

## Standard of Review

This Court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "To prevail on [a] substantial-evidence challenge, [the appellant] must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Id.* at 200. When reviewing whether the circuit court's judgment is supported by substantial evidence, this Court views "the evidence in the light most favorable to the circuit court's judgment and defer[s] to the circuit court's credibility determinations." *Id.* This Court "accept[s] as true the evidence and inferences ... favorable to the trial court's decree and disregard[s] all contrary evidence." *Id.*, quoting *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013). *Pasternak v. Pasternak*, 467 S.W.3d 264, 268 (Mo. banc 2015).

## Discussion

Mother raises two points on appeal. In her first point, Mother contends that the court erred in granting Father sole decision making authority over medical decisions for the children.

The court found that mother had "unorthodox beliefs as to medical treatment." This included a wide variety of testimony from Mother including that:

- Mother believed that she was a "healer" who could heal aliments by moving her hands over the body. She described this practice as healing with "love."
- Mother believed she directly communicated with God, who would use her to heal people.
- She gave "treatments" to Father that consisted of "pinching" his muscles to treat the sexual abuse Mother believed Father had suffered at the hands of Father's mother since birth. Mother believed this abuse had occurred because of her intuition and "testing"[5] she had done, even though Father denied any abuse by his mother.
- Mother had no formal medical training or certification but treated patients including family members and others. Mother would take "patients" to the basement of the home and treat them with oils, laying on of hands and meditation.
- Mother testified she used Bio-Energetics Synergistic Technique or B.E.S.T. to remove "interferences" by "stimulating certain points of the body while focusing on positive emotions to eliminate negative ones."
- Mother practices healings in which she would place oils on herself and meditate on the person in order to have the person healed by the oil. Sometimes these "treatments" occurred over the telephone when the person being treated was not in Mother's presence.
- Mother has sought treatment from at least two chiropractors for sexual abuse which she testified she suffered as a child at the hands of her father and step-father. She ended up

---

5. Mother was unable to articulate what this "testing" actually entailed.

in a sexual relationship with one or possibly both chiropractors as part of her "treatment" during the time she was married to Father.

- Mother believes that western medicine is a "complete failure" and for this reason cancelled her own health insurance.

- She would meditate over the phone with one of her chiropractors with whom she was having an affair and "rebalance" his heart with oils and "rebalance" his chakras by applying oils to herself. On one occasion she and her sister, Amie, felt called to meditate over him from their separate homes and together they "specifically removed six weighty interferences on the top of [his] primary heart muscle."

- Mother failed to attend a deposition in this case because of a heart issue for which she sought treatment from her chiropractor who used "quantum neurology" to determine that the "main arteries in [Mother's] left arm were blocked." Yet, Mother never sought medical treatment instead taking "natural blood thinners" she received from her chiropractor.

■ This Court finds that there was sufficient evidence from which the trial court could find that Mother's medical beliefs were significantly unorthodox. Mother had previously treated her children with essential oils despite both the children and Father requesting that she not apply the oil treatments. The children stated that odor from the oils embarrassed them at school following these treatments. She declined to vaccinate the children against infectious diseases and signed a school waiver of vaccination against the wishes of Father. Father would take his older son from a previous relationship to the doctor but Mother would not allow him to take their two shared children. She testified that she believed that the party's disagreements, such as vaccinations, could be resolved by mediation. Father's behavior showed that he was a proponent of the reasonable use of traditional western medical practices.

■ Under the circumstances, there was sufficient evidence from which the court could find that Mother and Father could not reasonably be expected to reach consensus on medical decisions for the children. They had vastly different beliefs regarding appropriate medical treatment. "[T]he parents' ability to communicate and cooperate is crucial in considering whether joint legal custody is proper." *Mehler v. Martin*, 440 S.W.3d 529, 536 (Mo. App. 2014). Mother argues that she delivered both children in a hospital and was open to the use of western medicine if there was not a holistic alternative. First, we note that the court was free to disbelieve Mother's testimony even if unchallenged. *Clayton v. Sarratt*, 387 S.W.3d 439, 444-45 (Mo. App. W.D. 2013) ("Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe note, part, or all of the testimony of any witness."). Further, even if Mother was open to western medicine in the absence of a holistic cure, this does not require the conclusion that it is in the best interest of the children for the parties to try and come to joint decisions on each medical treatment. The parties would almost always start from two opposite medical positions. Mother's plan to continually mediate over each individual medical decision or dispute was unreasonable and unworkable. During the time of the parties separation there was an inability to reach consensus on medical decisions. When one son suffered from mites, Father and Mother both provided separate treatments. This lack of a clear medical treatment plan is

not in the best interests of the child. In *Pasternak*, Father and Mother disagreed as to child's ADHD diagnosis, which resulted in father refusing to give the child his prescribed medication. 467 S.W.3d at 274. The Supreme Court found that the trial court did not err in granting mother sole custody because her dealings with father over the issue made it clear that joint parenting was "unreasonable." *Id.*

◼ "If the parents are unable to make shared decisions concerning the welfare of the children, joint custody is not in the best interests of the children." *Mehler*, 440 S.W.3d at 536. In this case, the trial court did grant joint custody but merely gave Father sole decision making power of the limited area of medical decisions. There was sufficient evidence upon which the trial court could form a belief that Mother and Father could not share decisions concerning medical care for the children. The parties testified to widely differing beliefs regarding appropriate medical care. The parties testified to a pattern of Mother disregarding Father's wishes and providing her chosen medical treatment to the children over his objections. The court was reasonable in finding that the parents could not jointly make medical decisions and given the overwhelming evidence regarding Mother's unorthodox views, the court did not err in designating Father as solely responsible for making these decisions for the children. Point I is denied.

◼ Mother also challenges the court's division of parenting time arguing that it violates the requirement of section 452.375.4 that there is a statutory preference for both parents to have frequent, continuing, and meaningful contact with their children. Mother states that she was only awarded 66 overnights with the children compared to Father's 299 overnights. In reality the Parenting Plan adopted by the court provides 81 overnights when hol-

idays are included. Additionally, Mother had parenting time every Wednesday evening, although not overnight.

◼ The public policy in Missouri is that "frequent, continuing, and meaningful contact with both parents" is in the best interest of a child. *Clayton*, 387 S.W.3d at 448. "But there is no requirement that parenting time be equally divided" between a mother and a father. *Id.* Section 452.375.1(3) defines "joint physical custody" as an arrangement where each parent is awarded "significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents."

Mother argues that she was given so little time that it required a finding by the court that providing additional time to Mother would "endanger the physical health or impair the emotional development of the children." In support of this argument, Mother cites to *Turley v. Turley*, 5 S.W.3d 162 (Mo. banc 1999). In *Turley*, in the original dissolution, the parties were granted joint legal custody with mother receiving sole physical custody with father receiving visitation with the children. That judgment was modified to substantially restrict when and where father could exercise his visitation with the children. The Supreme Court in *Turley*, interpreting 452.400.2 as it existed at that time, explained that examples of "restrictions" on custody are more than simply limitations but rather things such as "preventing a parent from having overnight visitation, restricting all visits to the custodial parent's home or outside the noncustodial parent's home, and requiring a third party be present to supervise visitation periods." *Id.* at 165 (citing examples of restrictions on visitation established by other jurisdictions). The court found that the modification in *Turley* was a restriction requiring special findings because the

modification prevented father from taking the children to his home during the months of December, January, or February solely because there could be bad weather on the drive and the amount of daylight each day was shorter. *Id. Turley* did not hold that giving one parent less than fifty percent of overnight parenting time requires any special findings.

In this case, Mother still has substantial parenting time with the children. She has weekly parenting time and bi-weekly overnight parenting time plus additional holiday time. The custodial plan adopted by the trial court varies only slightly from the "joint custody" plan that Mother submitted to the court addressing her wishes for Father's parenting time. Thus, we find it disingenuous for her to argue that such a plan now requires special findings of endangerment or physical and emotional risk to the children in order for the court to adopt such a schedule. Missouri has long recognized similar plans as "joint physical custody." *Clark ex rel. Clark v. Ingram*, 380 S.W.3d 607, 608-09 (Mo. App. W.D. 2012) (father received alternating one or

two overnights a week with split holidays and five consecutive parenting days in the summer); *In re Marriage of House*, 292 S.W.3d 478, 487-88 (Mo. App. S.D. 2009) (deeming award of alternating weekends, major holidays, and one week in the summer significant); *Wood v. Wood*, 193 S.W.3d 307, 311 (Mo. App. E.D. 2006) (finding significant parenting time awarded where father granted two weekends per month, one evening each week for three hours, certain holidays, and summer vacation time graduating from two to five weeks).[6]

Mother presents no arguments that persuade us that the Judgment imposes a custody arrangement that is not in the best interests of the children. Both Mother and Father have significant parenting time—even if less than either party would have liked. Point II is denied.

## Conclusion

The trial court did not err in granting to Father sole medical decision making for the children. Nor did the trial court err in its allocation of parenting time between

---

**6.** We recognize that our colleagues in the Eastern District of this court have recently questioned whether these types of custody arrangements meet the definition of "significant" because they are not a "measurably large amount." *Morgan v. Morgan*, 497 S.W.3d 359, 370 (Mo. App. E.D. 2016). *Morgan* ignores the plethora of Missouri cases holding such agreements do provide significant parenting time to both parents and instead merely references a Kentucky case that questions whether "any reasonable parent would argue 2 or 3 nights out of 14 nights constitutes 'joint physical custody.' " *Id.* at 370. We certainly recognize that most reasonable parents will want more time with their children but custodial arrangements are not designed to "divide" the children and give parents equal access. The court is to determine the arrangement which is best for the children; balancing significant contact with each parent with minimizing disruption to a child's daily life. *See Clayton*, 387 S.W.3d at

449-50. We believe the discussion in *Morgan* dangerously focuses merely on the number of overnights a parent has rather than the best arrangement for a child and the totality of parenting opportunities. Section 452.375.1(3) does not simply establish a formula by which courts count overnight visits and divide equally. Instead, the legislature established a scheme by which courts are instructed to award "significant, but not necessarily equal" periods of not only residential time but also time when the children are under the "care and supervision" of each parent. *Morgan* oversimplifies this distilling the complex analysis that trial courts make to merely one definition of "significant" as found in Merriam-Webster Dictionary. The parent/child relationship is difficult and complex even when the entire family is living under one roof, it becomes even more complex in a dissolution situation. We find the analysis is not nearly as simple or easy as the Eastern District sets forth.

Father and Mother. The Judgment of the trial court is affirmed.

All concur