

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

J.W., JUVENILE BY HER NEXT FRIEND )
K.C.G. AND K.C.G. INDIVIDUALLY AS )
NEXT FRIEND FOR J.W., JUVENILE, )
                        )
         **Respondent,** )    **WD86515**
                        )
**v.** )    **OPINION FILED:**
                        )
**N.R.W.,** )    **June 18, 2024**
                        )
         **Appellant.** )
                        )

### Appeal from the Circuit Court of Macon County, Missouri
### Honorable Mike Greenwell, Judge

### Before Division Four: Gary D. Witt, Chief Judge Presiding,
### Janet Sutton, Judge, and Sarah Castle, Special Judge

       N.R.W. (Mother) appeals the Macon County Court's amended judgment of paternity, child custody, and support (amended judgment) awarding both Mother and K.C.G. (Father) joint physical custody and a modified "sole" legal custody over J.W. (Child). In eight points on appeal, Mother argues the trial court erred by shifting the joint custody schedule when Child enters preschool at age three, by improperly dividing certain extraordinary expenses, by dividing "sole" legal custody with conflicting provisions contained within the division, by awarding Father a portion of his attorney's fees, by awarding Father child support when Child enters preschool at age three, and by reducing Mother's parenting time with Child when child enters

preschool at age three. For reasons stated herein, we affirm the amended judgment as to Father's attorney's fees award, but we reverse and remand all remaining points for further proceedings consistent with this opinion.

## Factual and Procedural Background

Mother and Father had an intimate relationship from 2020 to 2021, resulting in Mother becoming pregnant with Child. Both Mother and Father live in Macon County Missouri, with Mother living in Anabel, Missouri, and Father living in Atlanta, Missouri. Child was born in January 2022.

In April 2022, Father filed a petition for declaration of paternity and order for child custody and support. In the petition, Father alleged he was Child's natural father. Father also filed a proposed parenting plan requesting joint physical and legal custody, that his address be designated as Child's for mailing and education purposes, and that Child attend Atlanta School. In May 2022, Mother filed her answer and counter-petition. Mother also filed a proposed parenting plan requesting sole physical and legal custody, that her address be designated as Child's for mailing and education purposes, and that Child reside with Mother at all times. Father filed his answer to Mother's counter-petition and filed a motion for temporary visitation in June 2022.

The trial court ordered a blood test in May 2022, and, in July 2022, the trial court held a hearing regarding Child's paternity. The DNA blood test showed that Father was 99.99% likely to be Child's natural father. Following the hearing, three days later, the trial court issued a temporary order finding Father to be Child's natural and biological father and ordering joint legal custody and Father to have set visitation with Child.

Following the temporary order, both Father and Mother filed amended parenting plans. In his amended parenting plan, Father requested joint physical custody, sole legal custody, and that his address be designated as Child's for mailing and education purposes. In her amended parenting plan, Mother requested sole physical custody, joint legal custody, and that her address be designated as Child's for educational and mailing purposes. Father filed two additional motions to increase parenting time that were each granted upon the parties' agreement pending the trial date.

In late February 2023, a trial was held to determine custody of the Child. At the hearing, in addition to Father's testimony, Father presented the testimony of the Atlanta School District Superintendent as well as Father and Mother's joint co-parenting counselor. Mother testified and also called Child's family nurse practitioner as a witness.

Finally, the Guardian Ad Litem (GAL) testified, recommending Father and Mother split joint physical custody on either a two-day/two-day/three-day (2-2-3) schedule or a three-day/three-day/four-day (3-3-4) schedule. The GAL also recommended holiday visitation, including summer vacation, be split between Father and Mother and all exchanges of Child occur at the Macon Police Department. The GAL recommended that Father's address should be Child's address for education purposes and Mother's address would be Child's address for medical purposes.

The GAL also stated that she did "not feel comfortable having one or the other parent hav[e] sole legal custody" nor that "they should have joint legal custody at this time either." The GAL believed Father and Mother had "strong" animosity and would not "get anywhere in making joint decisions together." The GAL then recommended "the major decisions regarding the Child needs to be split" between Father and Mother. The GAL recommended that Father

3

make Child's educational and religious upbringing decisions and Mother make Child's non-emergency health care and extracurricular decisions. The GAL deferred to the trial court as to child support payments and also that, when Child reached "school age," that Child would have a week's vacation with the other parent.

At the end of trial, the trial court stated as follows:

Okay. I'll say I—you know, there are some things that [the GAL] testified to that I like. And—and one thing they allow is for—on legal custody is splitting the legal custody, which nobody ever does. But this might be a case where it's appropriate to split some of those legal custody decisions.

When discussing the physical custodial arrangement, the trial court commented that the physical custodial plan "[has] got to work once we get to school age," and "if the child would go to Atlanta to school if that's my ultimate decision, that's not going to work from Anabel[.]" The trial court and the parties then had the following exchange:

[Mother's Counsel]: So if I'm understanding, you'd like to split joint legal and the joint physical. You said "joint custody," so I'm just making sure that meant joint physical.
The Court: Correct.
[Mother's Counsel]: Okay.
The Court: I think at this young age, I—I think that'll work.
[GAL]: But potentially transition when she becomes school age?
THE COURT: Well, it's going to be a real problem. I—I would not—
[GAL]: Oh, I agree.
THE COURT: I would not expect, you know—
[GAL]: I—I agree. We just have a one-year-old.

In April 2023, the trial court entered a judgment of paternity, child custody, and support (original judgment). In the original judgment, the trial court decreed Father to be Child's natural and biological father. The original judgment awarded joint physical custody, with parenting time to change upon Child entering preschool at age three. The original judgment also found, "That it is in the best interest of the minor child that [Father] and [Mother] shall have the joint legal custody of the minor child," but then awarded split "sole" legal custody. The original judgment

4

awarded Father sole legal custody over Child's education and religious upbringing and awarded Mother sole legal custody over Child's non-emergency medical decisions and organized extracurricular activities, but also allowed that Father could enroll Child in activities that only fell during his parenting time and that Mother could take Child with her to church during her custodial periods.

Additionally, the original judgment ordered no child support until January 12, 2025, when Child enters preschool at age three, at which time it ordered Mother to pay child support. The original judgment also ordered Mother and Father split all extraordinary expenses, including, but not limited to: "camps, lessons, school pictures, school lunches, graduation, supplies, letter jackets, prom attire, school clothes/shoes, school supplies, class rings, cell phones, extracurricular activities, sports equipment, cars, car insurance, senior pictures[,] and other activities intended to enhance the athletic, social or cultural development of the child."[1]

Following judgment, Mother filed a motion for new trial or, in the alternative, a motion to vacate, correct, reopen, amend, or modify the judgment. In her motion, among other issues, Mother argued the trial court erred in splitting certain expenses as "extraordinary expenses" between the parties, awarding Father attorney's fees, changing the parenting time and visitation schedule upon Child entering preschool at age three in January 2025, and providing an exception to Mother's "sole" legal custody allowing Father to determine Child's extracurricular activities.

After an in-chambers discussion with the parties regarding Mother's motion for new trial or, in the alternative, a motion to vacate, correct, reopen, amend, or modify the judgment, the trial court entered an amended judgment changing only one provision. The only change the trial

---

[1] The trial court made additional findings in its original judgment beyond those listed herein, but for brevity's sake we include only those findings relevant to this appeal.

court made between the original judgment and the amended judgment was decreasing the age of an individual who could transport the child from age twenty-five to age eighteen. The trial court made no other changes.

Mother appeals the amended judgment. Additional facts necessary to the case disposition are included below as we address Mother's points on appeal.

**Standard of Review**

"We review a bench-tried case under the standard outlined in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Prevost v. Silmon*, 645 S.W.3d 503, 511 (Mo. App. W.D. 2022). "In a child custody case, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *A.J.C. ex rel. J.D.C. v. K.R.H.*, 602 S.W.3d 857, 866 (Mo. App. S.D. 2020) (quoting *Roush v. Roush*, 195 S.W.3d 12, 15 (Mo. App. W.D. 2006)). *See Murphy*, 536 S.W.2d at 32.

A no-substantial-evidence challenge claim asserts that "there is no evidence in the record tending to prove a fact that is necessary to sustain the [trial] court's judgment as a matter of law." *Y.R.H. ex rel. J.N.H. v. M.J.S.*, 672 S.W.3d 269, 273 (Mo. App. W.D. 2023) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014)). "When reviewing whether the [trial] court's judgment is supported by substantial evidence, [we] view the evidence in the light most favorable to the [trial] court's judgment and defer to the [trial] court's credibility determinations," disregarding all contrary evidence and inferences. *Id.* (quoting *Ivie*, 439 S.W.3d at 200).

Meanwhile, an against-the-weight challenge "presupposes that there is sufficient evidence to support the trial court's judgment and concerns the persuasive value of the

6

evidence." *Id.* "A trial court's decision is against the weight of the evidence 'only if the [trial] court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment.'" *Id.* (quoting *Ivie*, 439 S.W.3d at 206) (emphasis in original omitted). We will not reverse the judgment if the evidence supports two reasonable, but different, conclusions "because we are obligated to defer to the trial court's assessment of conflicting evidence and credibility, given its superior position to evaluate the evidence presented at trial." *Id.* *See also Prevost*, 645 S.W.3d at 512 (discussing the against-the-weight-of-the-evidence challenge standard of review).

"We presume the trial court reviewed all the evidence and based its decision on the child's best interests" so we defer to the trial court's credibility determinations. *Ball v. Ball*, 638 S.W.3d 543, 548–49 (Mo. App. E.D. 2021); *Ivie*, 439 S.W.3d at 200. "If the trial court has made no specific findings on a factual issue, such findings are interpreted as having been found in accordance with the judgment." *Ball*, 638 S.W.3d at 548. "We will not disturb a custody ruling unless we are firmly convinced that the welfare of the child requires some other disposition." *A.J.C.*, 602 S.W.3d at 866 (citing *Roush*, 195 S.W.3d at 15).

### Legal Analysis

Before considering Mother's points on appeal, we first address Father's argument that Rule 78.07(c)[2] precludes our review of several of Mother's points on appeal. Specifically, Father argues that Mother's II, IV, V, VII, and VIII points are waived on appeal because Mother failed to "preserve any 'allegations of error relating to the form or language of the judgment'" in a motion to amend the judgment filed after the amended judgment and decree of paternity issued

---

[2] Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2016, as amended, and all rule references are to the Missouri Supreme Court Rules 2023.

in August 2023. Father argues that while Mother raised her arguments in a motion to amend the trial court's original judgment, that because Mother failed to raise her arguments again after the amended judgment was entered that she has waived these points on appeal. We disagree and find that Rule 78.07(c) does not preclude Mother's points on appeal.

Rule 78.07 provides that "allegations of error must be included in a motion for new trial to be preserved for appeal." Rule 78.07(a). Rule 78.07(b) states that, "in cases tried without a jury or with an advisory jury, neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review if the matter was previously presented to the trial court."

"[A] party appealing a judgment following a bench trial need not raise an argument in a post-trial motion to preserve that issue for appeal provided the issue was otherwise presented to the trial court." *Schaberg v. Schaberg*, 637 S.W.3d 512, 524 (Mo. App. E.D. 2021) (citing Rule 78.07(b)). "An issue that was never presented to or decided by the trial court is not preserved for appellate review." *Brown v. Brown*, 423 S.W.3d 784, 788 (Mo. banc 2014) (citation omitted).

Additionally, Rule 78.07(c) states, "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." In 2005, the current version of Rule 78.07(c) became effective with its current language: "to reduce and discourage appeals and subsequent technical reversals for errors in the form of judgments that could easily be corrected by bringing them to the attention of the trial judge." *Wilson-Trice v. Trice*, 191 S.W.3d 70, 72 (Mo. App. W.D. 2006). The purpose of Rule 78.07(c) is "to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily corrected, alleviating needless appeals, reversals, and rehearings."

8

*McLeod v. McLeod*, 681 S.W.3d 215, 234 n.13 (Mo. App. W.D. 2023) (quoting *Estate of Hutchison v. Massood*, 494 S.W.3d 595, 608 n.13 (Mo. App. W.D. 2016)); *Brown v. Haley*, 687 S.W.3d 27, 36 (Mo. App. S.D. 2024). All five points that Father claims are waived do not relate to the judgment's form or language or dispute the lack of statutory findings to prompt Rule 78.07(c)'s application but, instead, address the applicable substantive law.

Even though not required by rule, Mother did file a motion for new trial or, in the alternative, a motion to vacate, correct, reopen, amend or modify the original judgment. Father argues that because Mother failed to file another motion for new trial after the amended judgment that Mother failed to properly preserve her arguments in points II, IV, V, VII, and VIII. Not only was Mother not required to file a motion for new trial after the original judgment, Mother was not required to file another motion for new trial after the amended judgment unless a new or different issue is raised by the amended judgment.

Again, the only change the trial court made between the original judgment and amended judgment was reducing the age of an individual who could transport the child from age twenty-five to age eighteen. As Mother notes, "Mother is not appealing the amended portion of that judgment regarding the change of the age from 25 to 18. She is appealing the portions of the judgment that went unchanged and appealing points which were raised and addressed in her post-trial motion." The arguments regarding those portions of the judgment were already presented to the trial court and were included in Mother's original motion for new trial. Thus, Mother's arguments were properly preserved on appeal.

### Points I, II, & III: Whether the Trial Court Erred in Ordering a Change in Parenting Time After Child Begins Preschool at Age Three

In points I, II, and III on appeal, Mother argues that the trial court erred in ordering an eventual shift in parenting time. Mother argues the trial court erred in changing the schedule

9

from a 50/50 schedule to Mother having sixty-seven hours with Child every two weeks beginning on January 12, 2025. Mother argues all three *Murphy v. Carron* standards apply and contends the trial court erred because: (point I) there was not substantial evidence in the record to support the change in that there was no evidence of Child's educational needs at age three necessitating attending preschool; (point II) the court erroneously declared or applied the law because the judgment speculates as to Child's best interest upon the child entering preschool at age three; (point III) the change in custody schedule was against the weight of the evidence since the distance between Mother and Father and the amount of time Child would spend going to and from school does not outweigh Child's needs to have frequent contact with Mother. We address all three points together because, regardless of which standard is applied, the result is the same.

Turning to the merits of Mother's points I, II, and III, section 210.853 provides, in relevant part:

> Upon a finding of paternity by a court, the parties to a paternity action may submit, either separately or jointly, a parenting plan, as defined in section 452.310, regarding the child who is the subject of such paternity action. If a parenting plan is submitted, the court shall order a parenting plan for such child.

Here, the trial court found that Father was Child's biological father following a DNA test, and neither party contests Father's paternity. The trial court then ordered a division of parenting time in the amended judgment and parenting plan.

Section 452.375.5 provides that a court must consider each of the following before awarding the appropriate custody arrangement in the best interest of the child:

> (1) Joint physical and joint legal custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint physical and joint legal custody award. The residence of one of the parents shall be designated as the address of the child for mailing and educational purposes;
> (2) Joint physical custody with one party granted sole legal custody. The residence of one of the parents shall be designated as the address of the child for mailing and educational purposes;
> (3) Joint legal custody with one party granted sole physical custody;

10

(4) Sole custody to either parent; or
(5) Third-party custody or visitation[.]

§ 452.375.5(1)-(5).  Further, section 452.375.1 defines "joint physical custody" as:

[A]n order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents.  Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents[.]

§ 452.375.1(3).

The court shall determine custody in accordance with the best interests of the child.

§ 452.375.2.  Further, section 452.375.2 requires:

When the parties have not reached an agreement on all issues related to custody, the court shall consider all relevant factors and enter written findings of fact and conclusions of law, including, but not limited to, the following:
(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
(5) The child's adjustment to the child's home, school, and community. The fact that a parent sends his or her child or children to a home school, as defined in section 167.031, shall not be the sole factor that a court considers in determining custody of such child or children;
(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. . . . ;
(7) The intention of either parent to relocate the principal residence of the child; and
(8) The unobstructed input of a child, free of coercion and manipulation, as to the child's custodial arrangement.

§ 452.375.2(1)–(8).

Per the amended judgment, the trial court awarded joint physical custody of Child, first ordering 50/50 parenting time, but then ordering a different division of parenting time in anticipation of Child entering preschool at age three and attending the Atlanta School beginning

11

on January 12, 2025. In the amended parenting plan, legal custody remained the same after this January 2025 date, but the division of parenting time between Father and Mother changed.[3]

As a general rule, judgments "which call for an automatic change in custody upon the happening of some future event are unenforceable." *Reichard v. Reichard*, 637 S.W.3d 559, 587 (Mo. App. W.D. 2021). "However, prospective changes to parenting time awarded in an original decree of dissolution based on the occurrence of a future event that is not conditional or indefinite are enforceable." *Id.* at 588.

In Missouri, "[n]umerous cases have upheld custody awards modifying the custodial time periods once a minor child enters school." *S.K.B.-G. ex rel. J.P.G. v. A.M.G.*, 532 S.W.3d 231, 239 (Mo. App. E.D. 2017) (concluding that it was reasonable and appropriate for the trial court to include a provision in a child custody order that prospectively changed the physical custody schedule upon the child starting kindergarten). *See also Abbott v. Perez*, 140 S.W.3d 283, 291 (Mo. App. E.D. 2004); *In re C.H.*, 412 S.W.3d 375, 384–85 (Mo. App. E.D. 2013) (finding a relocation amendment of the original parenting plan prospectively re-dividing parenting time when the child began kindergarten was valid); *Pijanowski v. Pijanowski*, 272 S.W.3d 321, 327 (Mo. App. W.D. 2008); *Reichard*, 637 S.W.3d at 588. We have affirmed "prospective changes in parenting time set forth in a judgment of dissolution when the change is tied to a child attaining a certain age or beginning a certain grade in school," specifically when the child turns five years old or begins kindergarten. *Reichard*, 637 S.W.3d at 588.[4] *See, e.g., G.J.R.B. ex rel.*

---

[3] In the amended judgment, the trial court stated, "The Court finds that joint physical custody and sole physical custody as allocated between the parties and detailed in the Court's Amended Parenting Plan, Exhibit 1a, incorporated as if fully set out herein, is in the best interest of the minor child." Because the trial court could not, by definition, award both joint and sole physical custody, as stated *infra*, this language is in error.

[4] *Reichard v. Reichard*, 637 S.W.3d 559, 588 (Mo. App. W.D. 2021) cites to *Abbott v. Perez*, 140 S.W.3d 283 (Mo. App. E.D. 2004) and *Pijanowski v. Pijanowski*, 272 S.W.3d 321 (Mo. App.

*R.J.K. v. J.K.B.*, 269 S.W.3d 546, 555 (Mo. App. S.D. 2008) (affirming custody arrangement changing parenting times upon the child starting school at five years old).

"It is reasonable and appropriate for the trial court to anticipate and plan for the need to adjust the custodial arrangement" when a child begins attending kindergarten, because "[s]uch provisions are not only in the interest of judicial economy but are for the convenience of the parties and in [a] [c]hild's best interest[.]" *S.K.B.-G.*, 532 S.W.3d at 240. In many cases, a prospective provision in a child custody judgment ordering a change in parenting time upon the child entering kindergarten at five years old is not speculative or unenforceable because section 167.031 mandates the compulsory school attendance of "a child between the ages of five and seven years . . . ." § 167.031.1. Such a change in parenting time is "based upon the known need of the child to have a predictable and stable custody arrangement, particularly when school begins" and is not speculative but based on "reasonable certainty." *Pijanowski*, 272 S.W.3d at 327.

The parties agree that the judgment's intent was to change parenting time at age three. Based upon the record in this case, the trial court's judgment re-allocating parenting time upon Child entering preschool at age three is an unenforceable prospective judgment. Nowhere in the record before the trial court or in the hearing to establish the parenting plan did Father, Mother,

---

W.D. 2008) in support of this proposition. As stated in *Reichard*, *Abbott v. Perez* held that a "judgment prospectively modifying father's parenting time when child turned five years old and was enrolled in school was not a conditional judgment because neither parent was 'required to perform or refrain from performing any future act as a condition of the enforcement of the custody provisions.'" 637 S.W.3d at 588 (quoting *Abbott*, 140 S.W.3d at 291). *Pijanowski* also held, as reiterated in *Reichard*, that a judgment that "provided for a change in parenting time once [the] child entered kindergarten was enforceable because its enforcement was 'not dependent upon future acts by the parties but [was], instead, based upon the known need of the child to have a predictable and stable custody arrangement, particularly when school begins.'" *Id.* (quoting *Pijanowski*, 272 S.W.3d at 327).

the GAL, the Atlanta School District Superintendent, or any other witness testify about Child attending preschool at age three. Nor was any testimony or other evidence presented showing that the Atlanta School District offered a preschool program. The record is devoid of any evidence Father or Mother intended to enroll Child in preschool at age three. Such event was conditional and indefinite, and thus unenforceable.

As best as we can discern, however, the trial court intended to alter the parenting time schedule upon Child entering "Preschool/Kindergarten" and "After Entering Preschool/School." The judgment, while erroneously relying on Child's third birthday in January 2025, clearly intended the parenting time arrangement to change when Child enters school. Altering the division of parenting time upon Child entering kindergarten is reasonably certain, predictable, and stable, because kindergarten attendance is mandated in Missouri. Thus, we reverse and remand in part for the trial court to amend the judgment consistent with Child entering kindergarten as is predictable, appropriate, and found to be in Child's best interest.

Points I, II and III are granted in part and denied in part.

### Point IV: Whether the Trial Court Erroneously Applied the Law by Requiring Mother to Split Certain Extraordinary Expenses

In her fourth point on appeal, Mother argues the trial court erroneously applied the law when it ordered that she and Father divide certain extraordinary expenses. Mother contends that many of the extraordinary expenses ordered split between her and Father were already expenses included in the basic child support amount and do not constitute "extraordinary expenses." Specifically, Mother argues the trial court erroneously determined that "school pictures, school lunches, graduation supplies, letter jackets, school clothes/shoes, school supplies, class rings, cell phones, cars, car insurance, and senior pictures" were extraordinary expenses and that this Court should "omit" those portions of the amended judgment and parenting plan referring to such

14

costs. Because we find the trial court's judgment included ordinary expenses within the list of "extraordinary expenses," we remand for the trial court to correct the amended judgment as elaborated herein.

"Line 6e of Form 14 instructs the trial court to factor '[o]ther extraordinary child rearing costs' into the child support calculation." *Woolery v. Woolery*, 679 S.W.3d 17, 26 (Mo. App. W.D. 2023); *Pickering v. Pickering*, 314 S.W.3d 822, 837 (Mo. App. W.D. 2010). Extraordinary costs are those expenses that are not included in the basic child support calculation, and include, but are not limited to, "tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel and other activities intended to enhance the athletic, social or cultural development of a child." *Woolery*, 679 S.W.3d at 26 (quoting Form 14, Line 6e, Comment A); *Pickering*, 314 S.W.3d at 837 (quoting also Form 14, Line 6e, Comment A). An extraordinary expenses award must not be redundant by including costs already accounted for in the child's ordinary living expenses, and the award "must otherwise be just and reasonable." *Id.* (quoting *Pickering*, 314 S.W.3d at 837). *See also Pickering*, 314 S.W.3d at 838 (stating that an extraordinary expenses award must not duplicate ordinary living expenses already covered by the presumed, basic child support amount).

Here, Mother cites two cases[5] demonstrating the trial court improperly listed ordinary expenses otherwise included in the basic child support amount in its "extraordinary expenses" award. Of those expenses of which Mother complains, at least three expenses—school lunches, cell phones, and car insurance—do not meet Form 14's definition of extraordinary expense and were already included in the basic child support amount.

---

[5] In her brief to this Court, Mother cites *McGowan v. McGowan*, 43 S.W.3d 857, 864 (Mo. App. E.D. 2001) and *Pickering v. Pickering*, 314 S.W.3d 822, 838 (Mo. App. W.D. 2010), as described herein.

For example, in *McGowan*, the Eastern District of our Court held that "the cost of school lunches is an ordinary, not an extraordinary, child-rearing cost" and the trial court "abused its discretion by including the cost of school lunches in its calculation of extraordinary child-rearing costs . . . ." *McGowan v. McGowan*, 43 S.W.3d 857, 864 (Mo. App. E.D. 2001). Also, in *Pickering*, our Court held that cell phones and car insurance did not meet Form 14's definition of an "extraordinary expense" and the trial court erroneously included those ordinary expenses as extraordinary expenses. 314 S.W.3d at 838.

Because the trial court misapplied the law in at least these three instances of which Mother complains, we remand for the trial court to redetermine the extraordinary expenses listed in the amended parenting plan and exclude all ordinary expenses otherwise included in the basic child support amount.

Point IV is granted.

**Point V: Whether the Trial Court Erred in Splitting "Sole" Legal Custody**

In her fifth point on appeal, Mother argues the trial court erred in allowing Father the ability to enroll Child in activities occurring during his parenting time even though Mother was awarded sole legal custody for decisions about Child's extracurricular activities. Mother argues the legal custody determination erroneously declared or applied the law because this judgment was inconsistent. Mother argues that even though she was awarded sole legal custody over decisions involving Child's extracurricular activities, under the amended parenting plan Father could still "make unilateral decisions on activities" without Mother's input.

"Missouri recognizes two forms of legal custody: 'sole legal custody' and 'joint legal custody.'" *In re Marriage of Brown*, 310 S.W.3d 754, 758 (Mo. App. E.D. 2010) (quoting § 452.375.1). Section 452.375.1(2) defines joint legal custody as an arrangement where "parents share the decision-making rights, responsibilities, and authority relating to the health, education

16

and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority[.]" *Reno v. Gonzales*, 489 S.W.3d 900, 902 (Mo. App. W.D. 2016) (quoting § 452.375.1(2)). As stated prior, section 452.375.5 provides five custody options available to the trial court which include the possibility of joint legal custody or sole legal custody. *See* § 452.375.5(1)–(5). Section 452.375.2 lists those factors as relevant to determining a custody arrangement in accordance with the best interest of the child. *See* § 452.375.2(1)–(8).[6]

Generally, "[t]he legislature has 'expressed a public policy preference for joint custody where such an arrangement is in the best interests of the child.'" *White v. White*, 616 S.W.3d 373, 380 (Mo. App. E.D. 2020) (quoting *In re Marriage of Barnes*, 855 S.W.2d 451, 455 (Mo. App. S.D. 1993)). The version of section 452.375.4 effective at the time of the amended judgment, prior to August 2023, further clarifies this preference, stating:

> The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents . . . is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

§ 452.375.4 (2021). *See also Moore v. Moore*, 645 S.W.3d 705, 711 (Mo. App. W.D. 2022) ("Thus, '[t]he legislature has expressed a public policy preference for joint custody where such

---

[6]  Here, the trial court made findings as to each of section 452.375.2's best interest factors. Because the trial court's final award of split "sole" custody is in direct conflict with section 452.375 and our caselaw thereby necessitating remand, we do not reiterate each of the trial court's findings on section 452.375.2's best interest factors in this opinion.

an arrangement is in the best interests of the child.'"). "The statutory preference for joint legal custody does not displace the paramount consideration in making child custody determinations: the best interests of the child." *Reno*, 489 S.W.3d at 902.

"Joint legal custody enables parents to share decision-making rights, responsibilities, and authority over the health, education, and welfare of the [child]." *White*, 616 S.W.3d at 380. "The parents' ability to communicate and cooperate is crucial in considering whether joint legal custody is proper." *Reno*, 489 S.W.3d at 903 (quoting *Pasternak v. Pasternak*, 467 S.W.3d 264, 273 (Mo. banc 2015)). "[J]oint legal custody is not always or necessarily inappropriate merely because there is some level of personal tension and hostility between the former spouses." *Id.* (citation omitted); *White*, 616 S.W.3d at 380.

Joint legal custody is not appropriate nor in a child's best interest, however, "when parents are unable to make shared decisions concerning the welfare of their [child]." *White*, 616 S.W.3d at 380. *See also Reno*, 489 S.W.3d at 903. The statutory preference for joint legal custody is overcome where "the evidence establishes that 'parents are unable to make shared decisions concerning the welfare of their [child].'" *Moore*, 645 S.W.3d at 712 (quoting *White*, 616 S.W.3d at 380). "A judgment granting sole legal custody must be based on a finding that the parties lack a commonality of beliefs concerning parental decisions, and lack the willingness and ability to function as a unit in making those decisions." *Id.* at 711; *In re Marriage of Sutton*, 233 S.W.3d 786, 790 (Mo. App. E.D. 2007) (looking to "the parties' commonality of beliefs concerning parental decisions, the parties' ability to function as a parental unit in making those decisions, and the parties' demonstrated 'willingness and ability to share the rights and responsibilities of raising their [child]'" to determine whether joint legal custody is in a child's best interest).

Section 452.375 "does not define sole legal custody." *Wood v. Wood*, 193 S.W.3d 307, 311 (Mo. App. E.D. 2006). Yet, caselaw and section 452.375, when read together, necessitates a finding that joint legal custody and sole legal custody are exclusive from one another. Either "the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority" or one parent—the sole parent—exercises "decision-making rights, responsibilities, and authority" over the child. *See* § 452.375; *Reno*, 489 S.W.3d at 905 (reversing and remanding because the record did not support an award of joint legal custody and limiting the trial court to a determination of which party should be awarded sole legal custody); *Sutton*, 233 S.W.3d at 793 (reversing and remanding where the trial court's award of joint legal custody was not supported by substantial evidence necessitating instead an award of sole legal custody according to the children's best interests); *J.F.H. v. S.L.S.*, 550 S.W.3d 532, 541 (Mo. App. E.D. 2017) (affirming the trial court's award of sole legal custody only to the mother); *Nelson v. Nelson*, 497 S.W.3d 892, 897 (Mo. App. E.D. 2016) (upholding trial court's award of sole legal custody only to the mother).

As defined by Black's Law Dictionary, sole custody constitutes "[a]n arrangement by which one parent has full control and sole decision-making responsibility—*to the exclusion of the other parent*—on matters such as health, education, religion, and living arrangements." *Custody, Black's Law Dictionary* (11th ed. 2019) (emphasis added). Sole legal custody, therefore, is defined by what it is not—joint.

Father requested sole legal custody over Child in his amended parenting plan. Meanwhile, Mother requested joint legal custody over Child with both parents sharing decision-making over Child's health, education, and welfare in her amended parenting plan. Contrasting with both parents, the GAL recommended "split" legal custody, with Father making decisions

about Child's education and religion and Mother making decisions related to Child's non-emergency medical needs and extracurricular activities.

In its amended judgment and parenting plan, the trial court declared, "That it is in the best interest of the minor child that [Father] and [Mother] shall have the *joint legal custody* of the minor child . . . ." (Emphasis added). Despite this statement, the trial court then awarded legal custody as follows:

> Based on the recommendation of the Guardian Ad Litem, Father shall have *sole legal custody* of the minor child for purposes of making major decisions related to the minor child's education and religious upbringing. Further, Mother shall have *sole legal custody* of the minor child for purposes of making major decisions related to the minor child's non-emergency medical decisions and organized extracurricular activities. Further stating, Mother is not prohibited from taking the minor child to church with her during her custodial periods, and Father is not prohibited to enrolling [sic] the minor child in activities that only fall during his parenting time. In the event the parties do not agree to defer and/or waive childhood immunizations, the minor child shall receive said vaccinations. Absent emergency circumstances, the parties shall communicate regarding the child through the AppClose parenting application. In emergency circumstances, each party shall be allowed to make immediate decisions related to the minor child, and shall promptly notify the other parent.

(Emphasis added).

We conclude that although the trial court designated this arrangement "sole legal custody," this arrangement does not align with joint legal custody or sole legal custody under section 452.375. Nor does this "sole legal custody" award follow any of section 452.375.5's custody arrangements, as there is no option for joint physical custody with both parties granted sole legal custody. *See* § 452.375.5(1)–(5). Splitting "sole legal custody" is an impossibility, since sole legal custody means only one parent may be given control of decision-making responsibility over a child.

It appears the trial court intended to award joint legal custody, but labeled it as sole. In the trial court's amended parenting plan, Mother and Father are each allocated their own

category of decision-making rights, *resembling a joint legal custody award in its effect* under section 452.375. *See, e.g., Wood*, 193 S.W.3d at 311 (concluding that "although the trial court designated Mother as the primary legal custodian, the legal custody award is actually one of joint legal custody."). Section 452.375.1(2) allows for categories of decision making to be allocated between the parties as part of joint legal custody. Mother was allocated authority over Child's non-emergency medical decisions and organized extracurricular activities. Father was allocated authority over Child's education and religious upbringing. The trial court even referred to this legal custody as "joint legal custody" in the amended judgment.

And, even though each parent was apportioned authority, the same legal custody award then contains internally conflicting provisions. Father may nonetheless enroll Child in activities during his parenting time in direct conflict with Mother's authority over Child's extracurricular activities. Mother may also take Child to church with her during her custodial periods in direct conflict with Father's apportioned authority over Child's religious upbringing. We note that section 452.375.1(2) references decisions regarding the health, education, and welfare of the child. As seen in section 452.375, legal custody is intended for *major life decisions* within these categories. Legal custody is not intended to address the day-to-day care and control of the child nor emergencies affecting the health and safety of the child, which are properly an exercise of parental responsibility. Regardless whether parents are awarded joint or sole legal custody, the parent exercising parenting time with the child retains the authority to make these day-to-day decisions unless limited or restricted by the judgment.

The trial court's other findings, however, suggest Mother and Father may be unable to make shared decisions, indicative of an award of sole legal custody. The trial court found, "Both parties submitted significant evidence regarding the inability of the parties to communicate

21

effectively regarding the minor [child]." The trial court also found that the counselor testified about Mother and Father's "inability to co-parent and the ineffectiveness of co-parenting." Both statements reflect that Mother and Father may be unable to make shared decisions concerning the welfare of Child, justifying an award of sole legal custody to only one parent.

When a judgment, as here, demonstrates internal inconsistencies, "the remedy is a remand for the trial court to clarify its judgment." *In re Marriage of Brown*, 310 S.W.3d at 758 (reversing and remanding a legal custody award where the trial court was "unable to discern from the language of the judgment whether an award of legal custody was to one or both parents."). "A general remand 'leaves all issues not conclusively decided' in the appeal open for the trial court's consideration on remand." *T.J.W. v. K.T.*, 660 S.W.3d 451, 459 (Mo. App. S.D. 2022) (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 633 (Mo. banc 2013)). On remand, "[i]t is within the trial court's discretion to reopen the record and receive additional evidence concerning legal custody, given the passage of time since trial and judgment." *Reno*, 489 S.W.3d at 905 (citation omitted). Resolving ambiguity in a custody award is important and not merely a matter of semantics. *See Halford v. Halford*, 292 S.W.3d 536, 544 (Mo. App. S.D. 2009).

We reverse the provisions of the amended judgment awarding split "sole" legal custody and remand to the trial court to determine whether joint or true sole legal custody should be awarded.

Point V is granted.

### Point VI: Whether the Trial Court Erred in Awarding Father a Portion of his Attorney's Fees

In her sixth point on appeal, Mother argues the trial court erred in awarding Father a portion of his attorney's fees because the award was not supported by the evidence. Mother

contends that the evidence did not establish that she had the financial resources to pay attorney's fees and the course of the case was not unusual. We affirm the trial court's award, finding the trial court did not abuse its discretion in awarding Father a portion of his attorney's fees.

Generally, parties to domestic relations cases are responsible for paying their own attorney's fees. *A.J.C.*, 602 S.W.3d at 869; *S.K.B.-G.*, 532 S.W.3d at 241. Section 210.842 "allows the trial court to award attorney's fees to a party in a paternity action." *S.K.B.-G.*, 532 S.W.3d at 241; § 210.842. "Section 452.340.7 provides that the court 'shall also award, if requested and for good cause shown, reasonable expenses, attorney's fees and court costs incurred by the prevailing party.'" *A.J.C.*, 602 S.W.3d at 869 (quoting *S.F.G. ex rel. A.E.R. v. A.M.G.*, 591 S.W.3d 907, 921 (Mo. App. E.D. 2019)). Additionally, section 452.355.1 provides, in relevant part:

> Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees . . . .

"A court is always required to consider the financial resources of both parties before deciding a request for attorney fees" and "[i]n the absence of evidence as to the parties' financial resources, an award of attorney fees cannot be supported." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 94 (Mo. App. W.D. 2006) (citation omitted). "The trial court has broad discretion in awarding attorney's fees and its ruling is presumptively correct." *A.J.C.*, 602 S.W.3d at 869 (quoting *S.F.G.*, 591 S.W.3d at 921). We will reverse the trial court's attorney's fee award under section 452.355.1 "only if the trial court abuses that discretion." *Id.* (quoting *S.F.G.*, 591 S.W.3d at 920–21). A complaining party demonstrates abuse of discretion if the attorney's fee award "is

clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (quoting *S.F.G.*, 591 S.W.3d at 920–21).

In August 2022, following the entry of the temporary order, Father first moved for attorney's fees, based on Mother's filing of "frivolous motions." Father's motion was addressed at trial during which Father offered, and the trial court admitted, an exhibit demonstrating $24,600.65 in attorney's fees up until trial. The trial court took the issue under advisement, and, in the original judgment, the trial court awarded Father $15,000.00 in attorney's fees. The trial court awarded Father these fees, finding:

> [Father] requested a judgment for attorney fees in this action. He submitted an invoice (Exhibit 23) into evidence showing attorney fees and expenses of $24,600.65 for time up to the start of trial. [Father] also asked for attorney fees of $235.00 based upon a Motion for Attorney fees [as] well as time during the trial. [Mother] did not request a judgment for attorney fees in this action. After considering all relevant factors including the financial resources of both parties, the merits of the case, the actions of the parties, specifically the number of motions that [Father] had to file in order to obtain frequent and meaningful visitation with his [C]hild, the Court finds that [Father] shall have a judgment against [Mother] for attorney fees in the amount of $15,000.00.

In May 2023, Father again moved for attorney's fees based on Mother's "frivolous motions" including her motion for new trial or, in the alternative, a motion to vacate, correct, reopen, amend, or modify the original judgment. Father argued that Mother could pay him a reasonable amount of attorney's fees because Mother was "able bodied and capable of earning a wage to pay" for Father's attorney's fees. The trial court denied Father's second motion for attorney's fees in June 2023. The order awarding Father $15,000.00 in attorney's fees in the original judgment remained unchanged in the amended judgment.

In her brief to this Court, Mother specifically argues that the trial court intended to award attorney's fees in accordance with the American Rule as the trial court itself stated at trial. Generally, Missouri courts apply the "American Rule," which requires litigants to bear the

expense of their own attorney's fees except when a statute permits such recovery. *Merriweather v. Chacon*, 639 S.W.3d 494, 503 (Mo. App. E.D. 2021). The "American Rule" also generally applies in domestic relations cases. *Id.*

Just as Mother argues, the trial court stated during trial that it would "take the attorney fees under advisement" but that "probably we'll go with the American plan." This statement does contradict the amended judgment awarding Father partial attorney's fees.

In civil cases, however, "[c]ourts typically disregard a trial court's oral statements made in a ruling on an issue because such statements are not part of the trial court's order or judgment." *Goodsell v. Noland*, 540 S.W.3d 394, 399 (Mo. App. W.D. 2018) (quoting *G.K.S. v. Staggs*, 452 S.W.3d 244, 251 n.5 (Mo. App. W.D. 2014)). Because the underlying proceeding here was a civil paternity action, the trial court's statement that it would "probably" divide attorney's fees according to the American Rule is a non-binding oral statement and is not otherwise part of the amended judgment.

Looking only at the amended judgment, the trial court explicitly stated in the amended judgment that it considered "all relevant factors including the financial resources of both parties," meaning the trial court did, in fact, consider Mother's financial resources contrary to her argument. Furthermore, the trial court found that the attorney's fee award was appropriate because Mother's actions caused Father to file a "number of motions" in order to "obtain frequent and meaningful visitation" with Child. Thus, the trial court found that the number of motions Father filed to obtain visitation was unusual in the course of the case, meriting the attorney's fee award.

We do not find the award is clearly against the logic of the circumstances nor arbitrary and unreasonable as to shock one's sense of justice. Thus, we find the trial court did not abuse its discretion in awarding Father a portion of his attorney's fees.

Point VI is denied.

**Point VII: Whether the Trial Court Erred in Ordering Mother to Pay Child Support to Father Upon Child Entering School at Age Three**

In her seventh point on appeal, Mother argues the trial court erred in determining that Mother should pay Father child support and that Father should be entitled to claim Child as his dependent starting on January 12, 2025, when Child enters preschool at age three. In its amended judgment, the trial court awarded no child support during the time custody was split 50/50, and then awarded child support to begin when Child begins school and made changes to the parties' parenting time. Mother argues the trial court's determination was an error of law because the trial court erred in changing the custodial schedule upon Child commencing school. Thus, the custody should have remained 50/50 with no support being ordered. We affirm the trial court's child support award upon the shift in parenting time when Child commences school, but remand for the trial court to award said child support when Child enters kindergarten and the parenting time schedule shifts, in accordance with our finding on Points I, II and III.

We apply the same *Murphy v. Carron* standard when reviewing a child support award. *See MacDonald v. Minton*, 142 S.W.3d 247, 250 (Mo. App. W.D. 2004). "The trial court has broad discretion in ordering child support." *Id.* "Absent a manifest abuse of discretion or a finding that the evidence is palpably insufficient to support the award," we will not substitute our judgment for the trial court's. *Id.*

Mother does not argue the amount of child support at $206.00 per month is in and of itself error, but that the support should never have been ordered at all. As discussed prior,

26

numerous Missouri cases have found the trial court may prospectively change the division of parenting time when a child turns five years old or begins kindergarten. *See, e.g., Abbott*, 140 S.W.3d at 291; *G.J.R.B.*, 269 S.W.3d at 555; *In re C.H.*, 412 S.W.3d at 378; *Pijanowski*, 272 S.W.3d at 327; *Reichard*, 637 S.W.3d at 587; *S.K.B.-G.*, 532 S.W.3d at 240. Nor is the trial court's child support award to Father "palpably insufficient" meriting reversal.

Thus, we remand for the trial court to modify the child support award to begin at a time consistent with this opinion.

Point VII is granted in part and denied in part.

### Point VIII: Whether the Trial Court Erred in Reducing Mother's Custodial Time with Child Upon Child Entering School at Age Three

In her eighth and final point on appeal, Mother argues the trial court erred in reducing Mother's parenting time upon Child entering preschool at age three. Mother argues this change in physical custodial time misapplies the law because it results in Mother having less than meaningful parenting time. We affirm the trial court's reallocation of parenting time effective when Child enters kindergarten, as stated *supra*, and disagree with Mother that this does not provide her meaningful parenting time.

As stated prior, section 452.375.1 defines "joint physical custody" as:

[A]n order awarding each of the parents significant, *but not necessarily equal*, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents[.]

§ 452.375.1(3) (emphasis added). "Equal time being spent with each parent is not required to find a joint physical custody arrangement." *King v. King*, 533 S.W.3d 232, 234 (Mo. App. W.D. 2017) (quoting *Love v. Love*, 75 S.W.3d 747, 765 (Mo. App. W.D. 2002)). "Although courts may want to split time evenly, it is not always in the child's best interest to do so." *Id.*

In the amended judgment, the trial court prospectively re-divided parenting time when Child enters preschool at age three in January 2025. The trial court ordered that Child attend school in Father's school district. Prior to Child entering preschool at age three, the amended judgment divided Child's parenting time 50/50 between Mother and Father. Once Child enters preschool at age three, however, the division of parenting time would change, reducing Mother's parenting time from 50/50 to Mother having parenting time with Child every other weekend and every other Wednesday. Further, Mother and Father would then split parenting time 50/50 during the summer, alternating every two weeks. Regardless of whether before or after the change in parenting time, Mother and Father would alternate holidays and birthdays per the schedule included in the amended judgment's parenting plan.

We have already found that a reduction in Mother's parenting time when Child enters kindergarten, not when Child enters preschool at age three, is permissible under *Gammon* and *King*.[7] *See Gammon v. Gammon*, 529 S.W.3d 350, 355–56 (Mo. App. W.D. 2017); *King*, 533 S.W.3d at 234–35. In *Gammon*, the trial court awarded joint legal and physical custody to the parents, with the children's principle residence with the father. 529 S.W.3d at 352. The custody plan gave the mother "parenting time with both children every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m.," "Wednesdays from 3:00 p.m. to 7:00 p.m.," and "a reasonably equal split of holidays." *Id.* We held that the mother's "weekly parenting time and bi-weekly overnight parenting time plus additional holiday time" constituted substantial parenting time under section 452.375.1(3). *Id.* at 355–56.

---

[7] We note that the amended judgment itself specifically changes parenting time. "After Entering Preschool/School." Therefore, our remand for the trial court to modify this date from when child enters preschool at age three to when child enters kindergarten reflects the trial court's intent in the amended judgment.

In *King*, the father "was granted parenting time every Wednesday from 5:30 p.m. to Thursday morning and every other weekend from Friday at 5:30 p.m. to Monday at 8:00 a.m." plus holidays and summers as evenly divided. *King*, 533 S.W.3d at 234. We held that the father's "five overnight visits with his children every two weeks" was sufficient for the father to have "significant, frequent, continuous, and meaningful contact" with his children under section 452.375. *Id.* at 235.

Here, Mother still has substantial, meaningful parenting time with Child. Just as in *Gammon*, Mother has bi-weekly parenting time and bi-weekly overnight parenting time plus additional holiday time with Child. *See Gammon*, 529 S.W.3d at 356 (finding that the mother failed to show that her "weekly parenting time and bi-weekly overnight parenting time plus additional holiday time" was not in the best interests of her children).

Mother cites to *Morgan v. Morgan*, 497 S.W.3d 359 (Mo. App. E.D. 2016), *White v. White*, 616 S.W.3d 373 (Mo. App. E.D. 2020), and *O.H.B. ex rel. S.M.B. v. L.Y.S.*, 665 S.W.3d 329 (Mo. App. E.D. 2023) in support of her argument that the change in joint physical custody when Child reaches school age prevents Child from having sufficiently "meaningful" time with her. Our court has previously declined to follow this precedent.

As we stated in *Gammon*, we "recognize that our colleagues in the Eastern District of this court have recently questioned whether these types of custody arrangements meet the definition of 'significant' because they are not a 'measurably large amount.'" *Gammon*, 529 S.W.3d at 356 n.6 (quoting *Morgan*, 497 S.W.3d at 370). However:

> *Morgan* ignores the plethora of Missouri cases holding such agreements do provide significant parenting time to both parents and instead merely references a Kentucky case that questions whether any reasonable parent would argue 2 or 3 nights out of 14 nights constitutes joint physical custody. We certainly recognize that most reasonable parents will want more time with their children but custodial arrangements are not designed to divide the children and give parents equal

29

access. The court is to determine the arrangement which is best for the children; *balancing significant contact with each parent with minimizing disruption to a child's daily life*.

*Id.* (internal quotation marks and citation omitted) (emphasis added). We reiterated in *King* that the holding in *Morgan* "ignored significant Missouri case law holding that similar parenting plans afforded 'joint physical custody,'" and that *Morgan* "dangerously focuses merely on the number of overnights a parent has rather than the best arrangement for a child and the totality of parenting opportunities." *King*, 533 S.W.3d at 235 n.2 (quoting *Gammon*, 529 S.W.3d at 356 n.6).

Thus, the trial court did not misapply the law and we affirm the trial court's reallocation of parenting time as modified in Points I, II and III, finding that it does provide Mother with meaningful parenting time.

Point VIII is denied.

### Conclusion

We affirm the amended judgment as to Father's attorney's fees award, but we reverse and remand in part all remaining points for further proceedings consistent with this opinion.

_____
Janet Sutton, Judge

Gary D. Witt, C.J., and Sarah Castle, Sp. J. concur.